The next case is 525-0847 Felicia Niles-Niebrugge v. Mark Niebrugge I may be mispronouncing that. I apologize if I am. Okay, for the appellant, we have Mr.. Is this Ligar? Ligar, yes. Ligar, okay. If you're ready, you can approach and begin. Thank you, Your Honor. Good morning. May it please the court. This matter comes on today as an appeal from a judgment on a dissolution of marriage. The parties in this case were married in May of 2007. And the divorce order entered in this case is from 2025. There were two hearings in this matter, two full-day hearings, and they were substantially related to the division of marital assets. There was a minor child involved, but most of the hearings involved the assets of the parties. And the case involves substantial claims of non-marital property by the respondent. And those are the issues that are on appeal. The determination by the trial court of non-marital property with regard to substantial investment accounts and the real estate where the marital residence was located. I would first note that it is the public policy in Illinois for property acquired after a marriage to be classified as marital property. And this is based on the statute of 750 ILCS 5 slash 503, specifically subsection B1, which identifies all of the property acquired after the marriage is marital or there's a presumption of marital property subject to the possibility of rebuttal under subsection A of the same statute by clear and convincing evidence. And that is all spelled out within the statute. There's case law that upholds that standard, but that's not something that is derived from case law. That is specified directly in subsection B1, that clear and convincing evidence standard. So in this case, we have brought this under a de novo review because it appears that in the trial court the incorrect standard was applied. That it was not a burden-shifting framework with a presumption of marital property subject to a clear and convincing evidence for the rebuttal. Instead, it appears that an equitable distribution was sought by the trial court, which is, I think, highlighted in the transcript from the hearing on the post-trial motions. There is significant back and forth between myself and the trial judge, Judge Bovard, where it is clear that these notions under the relevant statute have not been followed. I would note that in the, I'm going to refer to the parties by names if that is, I think that's appropriate. Here we have Felicia and Mark. So in Mark's response, they do question the standard of review here. We bring this under de novo review. But what's argued is that this should be under an abuse of discretion or against the manifest way to the evidence standard. Excuse me. Which one? Yes, the second. Against the manifest way to the evidence. And you're saying that the FLE arc is up? Yes. Okay. Could we, I think we all understand the standard of review that you've alleged. Could we get to the facts of the argument, if you don't mind?  So what we have are two categories of assets that are at issue here. One is real estate. So the real estate was purchased, it was a plot of land with no development on it, was purchased after the marriage. It was very close after the marriage where the real estate was purchased. Approximately six days, is that correct? Yes. And the transaction, the real estate transaction had actually, the sale of that property had started before the date of the marriage. It just was closed on six days afterwards? Yeah, I believe that my client actually reached out initially with regard to the property. And then Felicia reached out originally, and then Mark did then after that. My client was bedridden, pregnant at the time. And Mark then went through with the real estate transaction. And the funds used for the purchase of the real estate came from an account that predated the marriage. But that account at that time, six days later, had both marital and non-marital funds in that account. We're not arguing that that plot of real estate necessarily could not then somehow be divided out. I don't think that there is a difficulty if you want to say that Mark took funds from somewhere, put them in that account, and then purchased real estate. I don't think that that takes a forensic accountant to do that. However, one of the requirements for establishing that this purchase was non-marital is that we do have to identify the source of the funds. And when Mr. Niebuhr, he testifies about, when Mark testifies about the source of the funds, he says he got them from his investment guy. And he says they're either from his insurance proceeds or they're from investment accounts that were pre-marital. So even just being able to say what the source of the funds are, he can't do that. So with this property, this isn't, we could say this is the real estate and that's that, I suppose, if we just wanted to talk about the physical border of that real estate. But this is where the marital residence was constructed. So following that purchase of the plot of land, which Mark titled in his name solely, which under subsection B-1 of the relevant statute is not determinative with regard to whether or not this is, of course, marital or non-marital. It specifically identifies that in the statute as well. In order to even place a home on the property, the property is developed by placing a basement and foundation permanent on the property. The evidence presented at court is that Mark did not put those funds into the account that would pay for both the real estate purchase and that development of the foundation. There isn't sufficient funds that go into that account. And there's testimony where Mark is asked about those funds going into that account, and they don't add up to that total amount. So how do we end here? So I think what you're trying to say is that the funds to build the structure, to buy the structure, to maintain the structure, those type of funds, were all from commingled accounts? Yes. And you're saying that the testimony supports that?  Because I think in one of the briefs it said that the payroll income was divided there? Yes. Or placed into that account? Yes. Okay. And was there testimony, because it was a lengthy transcript, was there testimony that the wife had some involvement in improving the property?  So there is that. There is that as well. And I'll speed up here to finish up, I guess, this development. Because what we have is we have the real estate land purchase. We have the foundation installation. We have, there was a preexisting single wide mobile home that Mark owned prior to the marriage. We don't contest that he owned that prior to the marriage. And then there were, there was more structure built on the property, including garage addition and the whole thing. But let me restate that. If you don't contest that he bought that prior to the marriage, was there testimony about the value of that at the time of the marriage? There was. I can't quite cite to it. But I think that there was some nominal value that was discussed by John Niles, maybe like $5,000, some small amount. Because this piece of, this trailer was placed onto that foundation, and it was, no one lived in it at that time. It was placed there. And my client's father and other marital funds were put into constructing a garage, constructing an addition, roofing the entire structure. So this was not, no one ever lived in the single wide in this marriage. This was all improvements to the property. And there is simply not that sort of deposit into the accounts that paid for these materials and all of that. It's just not in the evidence. And the transcript of this case is voluminous, I would say, partially because I tend to repeat myself or stutter, so I apologize for that. But what we were doing in this case is giving Mark every opportunity to explain how different pieces of property were non-marital. We were giving him an opportunity to testify about that, and he could not do it from his own knowledge. Did he offer it in any form? So, through hearsay, he tried to offer it through hearsay that was not admitted. Financial documents? So, that's where when we talk about what was in the accounts and what was used to pay for these improvements, the accounts don't bear that information. They don't, they're not consistent with what his testimony is. And that's the problem, is that he could not show the source of funds. He could show bank accounts. He could show expenditures. But there was no division. There was no way that Mark could say, at this point here, I put into that account $35,000 from my Wells Fargo investment account number. We don't even need the number. He couldn't say, this came from my Wells Fargo account. I placed it into this account, and then I paid for these expenses related to the marital residence. He could not do that. In fact, his testimony is quite the opposite. He talks about how all the waters are muddied. He talks about how I have a significant portion of his testimony that is identified where he talks, where I ask him a question about paying for maintenance fees on a vacation property. And his indication to me is that, yeah, we'll say that's my non-marital funds. And I ask him what he means by that. And he says, that's how it was from the beginning. It was my non-marital money mixed with my marital money all along. And that's how it was. Was there testimony about her contribution, her funds that she contributed after the marriage into these quote-unquote marital accounts? Yes. Where did her money come from? Just her employment? So, because there's a lot of accounts that are premarital, the prudential accounts and these accounts. And then those accounts merge, transfer, get put into a different account when it's bought, clearing house.  He doesn't seem to understand how the money went from account A to account B. But he understands that his money was in this account, not his money as he considers it is in a new account. I don't see where there's any indication that she brought in, you know, $50,000, $100,000 worth of premarital funds and co-mingled them. So, the only co-mingling, are you suggesting that the only co-mingling is that his funds were put into accounts that her employment and money she earned during the marriage was also put into those same accounts? So, all of the money that he made during the marriage was marital property. So, he's mixing all of his money that he makes during the marriage. And that's how he testifies about it, that all along he's mixing his money premarital with his marital money. So, and plus he has retirement accounts that are marital property as well that get paid out in some form. And there is no accounting for where those monies went. But didn't the court find that the court somehow was able to trace from this account to this account? Let's say from this retirement account he put $50,000 into a new account that was then co-mingled with his money he earned during the marriage. But the court found that $50,000 of that account was his premarital and the rest of it was otherwise. We are here because the court did not trace any funds. We are here because there is no documentary evidence that shows a transfer of funds. There's no final statement for an account that shows a transfer out of the account. There's no initial statement from another account. There's no documentation. Right. So, when we say the court somehow found that, I think that in my reply brief, the courts, and this is on page 4 of the reply brief, an excerpt from the hearing on the motion, on the post-trial motions, the court, Judge Bullard says to me, because we don't have evidence from Mark, the judge says, what other explanation do I have when I'm assessing whether he's met his burden? What other explanation is there that, all right, you've identified accounts, so we know you had some monies there and now you still have accounts afterwards. What other evidence is there that that money could have come from a different spot than what he had before the marriage? All right. I'm going to interrupt. Counsel, it's clear then from his court order that there were a number of pieces of evidence. There were civets related to the various different retirement accounts because they're listed in the court order. So, to say that there was no evidence, there was Exhibits A, 11, 12, Exhibit 16, Exhibit, the IRA form ending May 6, 7, 5, Exhibit 18F, Exhibit 19, and then there was testimony related to those exhibits. You would agree with that, correct? I would agree that we identified accounts, certain accounts that existed at one time and certain accounts that existed at another time. I would not agree that Mark testified about what money went where because when asked those questions, he could not answer. And he did not have, like I said, some kind of final statement and some kind of initial statement. We don't, the money could come from anywhere. He could have taken money from his marital retirement accounts and divided it as he might see fit for investment purposes among a variety of accounts, and he didn't provide those documents. And it is our position, and I think this is included in my reply as well, that the conclusion that you would make from that is that he didn't produce those documents because it isn't helpful to his position. Not that he didn't produce those documents because it would prove what he's saying. He didn't give us the documents, said he didn't have them, and the fact that he didn't have them does not mean that now he is subject to a lesser burden. We have a marriage that is 17 plus years, and he wants to go back to day one or day six and say, no, all that stuff was mine, I didn't keep a good record of it, but I want it and I don't want my wife to have any of it. That's what we have here in this case. You may have been saying that, but the court found that many of those accounts were commingled, but was able to determine what was premarital and awarded to him, took the marital aspect of it, and divided it equally. So it's not like the court discounted where any of the money came from. It somehow made some determination of what was premarital and what was not. So I understand that the court put, that said that in an order. What the court did not do is make an evaluation and trace funds. So they didn't show the math. Well, there was no math to show because we don't have the information, and on top of that, when I talked about the real estate at the outset, in addition to that real estate, Mark testified, it's not just in my brief, it's in Theopolis' brief as well. He testified that he was using the money for also his legal expenses, things related to his daughter, and he didn't have enough for the real estate, and he's saying that he was using it for all of these other expenses. $50,000 of attorney's fees is what he was paying for a prior litigation with the mother of his daughter, and he said he was using the inheritance money and the insurance money for that on top of everything else. He doesn't have the money for it. Let me ask you this. Was there any testimony with regard to what you just said, that those expenses that he admitted to spending money on, did your client know that at the time that he was spending that? Was there testimony that she was aware that he was using funds for those expenditures? I think that there were documents that she saw later to show the extent of what he had spent. Did she object to it during the time that those expenditures were being made, and did she know that at the time they were being made? There was no testimony about that. I'm not sure how that might be relevant, but she was definitely under the impression and understood that they bought a house together and that it was in both their names, and he did other things like the insurance was in both their names. He listed her with the county treasurer on the taxes and all of that. So as far as whether she knew what he was doing with making payments out of marital funds for non-marital purposes related to that. There is testimony with regard to some of those expenses, though, that it was from his inheritance and from sale of some of his premarital property. I'm sorry, insurance from the premarital property. I don't know if she would have objected to him paying an attorney's bill out of his insurance proceeds. I think that that would have probably been appropriate for him to do, to pay for his legal fees out of his non-marital funds. I think that this is expanding what he had, and I think it's a fiction at that point. He couldn't do those things, all of these things that he claimed to have done. Your time has run. Yeah. We're going to give you some additional time in rebuttal. Okay. But for now, we're going to hear from your opponent. Thank you. Is it Baker? Yes, Your Honor. Yes. Good morning. Mike is sitting by. Thank you. Good morning, counsel and Your Honors. Basically, I disagree with Mr. Flyger as far as his testimony, not testimony, but his statement to you, Your Honors, that Mark was clueless. Mark was not clueless. He kept a lot of records, more so than most parties do, in a 17-year marriage. May I stop you for one second? Yes. I just have a housekeeping thing I want to bring up.  In your brief, page 10, 13, and 14 in particular, there appears to be like different fonts thrown into some of the thing where we have like a small font in the middle of the sentence. I just found that very distracting. And usually I'm distracting you with it. Okay. But I'm not sure why that happened. Like the middle paragraph on page 13, the last line there, second to the last line, settlement agreements, relocation provision, that looks like a tiny little font compared to the rest of the sentence. I just don't know why that happened, but if it's something that you can control from now on, perhaps don't do that. It's like looking cross-eyed at it sometimes. Thank you. Going back to what I was stating about Mark, he's not as clueless as Mr. Flyger made him out to be. I think Mr. Flyger is basically referring to his testimony during his direct examination, but when I had an opportunity to ask Mark questions on case in chief, he referred to the documents that have been admitted into evidence. He did keep a lot of documents that show that his accounts were some of them, three of them are premarital, three of them had mixed funds because when GE closed in that year, he had to move his retirement funds from GE to another investment account, which he did. And so some of those funds, he worked at GE prior to the party's marriage, so some of those funds were non-marital retirement funds. And, of course, after he was married, then some of those funds became marital funds. The investment accounts were from his inheritance from his father's estate, and he has, and there were exhibits admitted into evidence that show that those funds were kept non-marital throughout the entire marriage. They were never commingled with any funds from the marriage. And as far as the argument about the commingled funds, he does have documents that were admitted into evidence that show how those accounts that had commingled funds started, what the amounts were, and then after the parties were married, as I said, especially the pension funds were put into a joint account, and we've also acknowledged one, in particular, the Jackson annuity, would be divided equally between the parties. So Mr. Newberg, he isn't saying, yes, I get all this money, but he's acknowledging that there are some marital funds and that they're commingled, but that he had documents that showed what some of those accounts started, how they started and when they started. Some of them started before the marriage. You indicated the Jackson annuity. In the points order that we are looking at, it said that the parties gave widely different values of this account. So I'm looking at Jackson annuity, right? I think so. And the court petitioner said it was valued at $329,000, and the respondent was $386,000, so there was almost a $60,000 difference, and the court used the higher number. If the documents were so clear in this case, as you argue, how do you arrive at such different values? Well, the $386,000 was a value that was shown on, and I don't have the exhibits with me, or... The 2024 document? Yes, yes. Okay. And so it was an updated value. That would be my explanation for... The 2023 would have been probably produced in discovery prior to my representing Mr. Niebuhr to your mark because I was the second attorney that took over in the case. You have not filed a cross-appeal in this case? I have not. Okay. So you agree with all the numbers that the court used in its order here today? Yes, yes, we do. Okay. All right. As far as Mr. Flagler talked about the funds used to pay for the property, as it's been discussed, the parties were married six days after the purchase of the property was finalized, and Mark's argument, I think, to the trial court was, where were the funds going to come from? My wife didn't have those funds. I had to come up with those funds because I couldn't get a loan on a mobile home from a bank. They wouldn't give me a loan on it. So I had to come up with the funds somehow. He either took the cash from his investments or he did have some money coming in from a house that he had that was destroyed by fire, and he had those insurance funds coming in, so he did use those to purchase that property. So I asked your opponent about the timing of that purchase for the land. It was six days after the marriage. He had actually applied for the loan prior to the marriage. Right. And so I believe your opponent indicated that she had actually located the property or started the process, then was on bed rest or had some medical complications due to pregnancy, and so he ended up finalizing it. So my question to you, if that's the case, then the court's determination on the marital property purchased was just a credibility call for the court? Had to decide which body was more credible? Which witness was more credible. Also, as far as the property records, of course, they would all have been in my client's name. Right. Okay. But isn't the standard, though, that the property is presumed to be marital unless she can rebut the presumption, correct?  And there was an issue here with the marital residence in terms of some commingling. Would you agree with that? I don't know that the record shows that. I think Mr. Niebuhr received cash from his investments, so he would have had to have some way of channeling those funds into purchasing. I understand with relationship to the purchase of the lot, that the appraisal of the property was more than just the lot. It included the foundation, the marital, the basement, the home, the double-wide, the improvements, the roof, the shed. Would you agree that the issue becomes the commingling of those improvements? Well, again, I think Mr. Niebuhr, his testimony more in our case in chief than in when Mr. Fleiger was questioning him was he paid for those improvements through, again, monies that he received out of his investment accounts because there wasn't always the money available that they needed to pay for all these improvements. But isn't the burden on you and your client to trace those funds? Yes. Isn't that the standard? Yes. Okay. So he would have to trace all of the funds that were used in that property. Is that correct? Yes. Okay. But the court's award on those items was based on the testimony it heard, the evidence it was presented with in terms of where these people's money originated from, where it came from, who contributed to what, and to the testimony of each party was before the court when it made its decision. It was, yes. I don't have any further argument. If you have any further questions, I'll be glad to answer. Thank you very much. All right. Thank you, Your Honor. I appreciate your comments. Mr. Fleiger? Thank you. Let me ask you, as you're approaching, what do you have to say about Justice Shulman's questions with regard to the tracing? Was there tracing in this case as it related to the home and the property and the improvements? So I would say that there was not, because the testimony of Mark was that he didn't know the source of the funds that he used for even the purchase of the real estate. He did not know if it was insurance proceeds. He did not know if it was investments. He did not know either of those two things, how he bought the house. Did he suggest that it was one of those things? Yes. But I think that he could have narrowed it down. But he testified that it was from those funds, from his cumulative funds that it came from? I would agree that he did not know which of the sources of his funds it came from, but he thought that it was from his funds. Did your client ever testify that any of those funds were her funds? No. Okay. But it was also paid out of an account that was co-mingled marital and non-marital funds. Right. And he doesn't have the unilateral authority to just make a loan out of marital funds to purchase something and then classify it as non-marital 17 years down the road. He doesn't have that authority, and I don't think Illinois law supports that. I would point the court to page 9 of our brief, and I think that there are two cases that are cited there, in re-marriage of Close and in re-marriage of James and Wynkoop, which I think provide that they're analogous to the situation here. They're on point in many respects, and just what it takes to actually meet a burden of clear and convincing evidence. And this case is worse than those cases where they couldn't meet their burden. Where does the court start from? We start from marital property, right? Yes. And then it's their burden to show by clear and convincing evidence that it was not marital property. Yes. And that is not always a difficult burden to show. A presumption like that could be as simple as, like I said before with the account statements, here's my last account statement from this account that had tens of thousands of dollars in it or hundreds of thousands of dollars in it, and to not produce that last account statement that shows the disposition of funds. And that's not 17 years ago. Mr. Parker, do you also dispute every finding by the trial court as to the investment accounts? Every finding? Yeah. Is there one that you, for example, say is accurate, or do you think they're all inaccurate? So the only reason why I dispute all of the accounts is, and in fact, even in our proposed distribution of marital property that we submitted to the court before the trial, it did not include in it, we didn't seek half of every account because we thought that he would be able to show evidence about those accounts being non-marital accounts, and he failed on every account to be able to identify the source of it. So, yes. So my question is, are there any accounts that you agree are non-marital or contain the majority of non-marital property or not? I would say that there may be, off the top of my head I have difficulty with that, there may be an account that didn't change, but I think that even some of the accounts that stayed all the way through were accounts that received investments during the marriage, that they weren't, they were not free of commingling. And in fact, that's part of his testimony, that he moved the money back and forth as he saw fit. So what do you think, or what are you asking this court to do? Obviously the marital home is to be reclassified. Yes. What's your relief? Are you just in case you have to completely go back for a retrial? What is your choice for relief? I think making a determination that all of these investment accounts are marital property is appropriate here because he couldn't trace, he couldn't carry that burden, even on a basic level he couldn't carry that burden. So would that require then, if the court finds that, a retrial on all issues? Actually, I don't, I think that, I don't think that, I don't think that it would require a retrial on all issues because I think that the other, and I address this in our reply. When the argument is made about the proper standard of review, our argument there is that even if this isn't de novo, which I don't think that there's a real question about the law about whether this is de novo review, the case that I cite says that's the standard of review. I mean, that's the standard of review. And simply because it identifies fraud in the case, whether or not the proper evidentiary standard was applied is something that is reviewed de novo. But in the reply, I do set forth the argument that because of what the testimony was here, Mark does not have the ability to, yes. Okay, as to what really came up. Yes, no, I understand. And your time has expired so we need to kind of get to that. Sorry. So because he doesn't have the ability to carry the burden, because of all of what he has presented already, just identifying, classifying all of those accounts as marital property is appropriate because it's an impossibility. If we went back and had a retrial, it would just be the same evidence that he has no ability to show that it's non-marital. So even the inheritance account, do you think should be reclassified as marital property by this court? If, because he cannot show, because he cannot show any sort of accounting of it.  So I may be, I may. As you proceed. I'm sorry. If we do as you ask us to do, and that would be to consider it as marital property, wouldn't that require a re-division of the property? A re-dividing, if you will? So, well, just making that subject to an equal division, I don't think would require. Bring in? Yeah. Okay. I think that it would. I could be just completely wrong. I'm sorry. Questions? That's the first time I've heard that. I appreciate that. No questions. No questions. Okay. Thank you very much for your arguments here today. Thank you all. This matter will be taken under your guidance. Thank you.  Thank you. Thank you.